UNITED STATES of America, Plaintiff–Appellee,

v.

ONE 1985 CADILLAC SEVILLE, and Approximately $434,097.00 in United States Currency, Defendant,

and

Michael Miroyan, Claimant–Appellant.

No. 87–2307.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1988.

Decided Jan. 31, 1989.

---

Stanley P. Gimbel, Milwaukee, Wis., and Doron Weinberg, Larson & Weinberg, San Francisco, Cal., for claimant-appellant.

David L. Denier, Asst. U.S. Atty., Tax Div., San Francisco, Cal., for plaintiff-appellee.

Before NELSON, BEEZER and HALL, Circuit Judges.

BEEZER, Circuit Judge:

Claimant-appellant Michael Miroyan appeals the district court's order of summary judgment, and denial of his motion for declaratory judgment, forfeiting United States currency and an automobile to the United States under 21 U.S.C. § 881 (1982) for involvement with controlled substances. Miroyan argues that an Internal Revenue Service ("IRS") lien on the property at is-

sue represents a prior equitable interest of the IRS in the res that is superior to any claim unperfected as of the date of lien. He attempts to assert the lien priority. He also objects to the forfeiture on constitutional and statutory grounds. We affirm the district court's order forfeiting an automobile, and reverse and remand the order forfeiting currency for further jurisdictional findings.

I

On March 8, 1985, the California Highway Patrol stopped Michael Miroyan for erratic driving. The officers determined that Miroyan was under the influence of drugs, and arrested him for driving while under the influence. A subsequent search of Miroyan and his 1985 Cadillac Seville automobile revealed cocaine, marijuana, and $434,097 in cash. The Highway Patrol turned over the vehicle and the seized evidence to the Santa Cruz County Narcotics Enforcement Team.

On March 11, 1985, the District Attorney of Santa Cruz County filed a complaint for forfeiture of $434,000, pursuant to Cal. Health & Safety Code Ann. § 11470 (West Supp.1988), in the California Superior Court for the County of Santa Cruz. On March 12, 1985, Judge Donald O. May of the Superior Court ordered the $434,000 delivered to the Santa Cruz County Treasurer for deposit in an interest-bearing account pending final adjudication of the case. Disposition of the state case is not apparent on the record before us.

Also on March 11, the IRS issued jeopardy and termination assessments against Miroyan. On March 12, the IRS filed a tax lien in the total amount of $665,940 against Miroyan. The next day, March 13, the IRS served a notice of levy on the Santa Cruz County Sheriff's Department.

Another claimant to the cash soon appeared. The Drug Enforcement Administration ("DEA") seized the $434,097 on March 19, 1985, as narcotics-related property subject to forfeiture under 21 U.S.C.

§ 881. The circumstances of the seizure are unclear; we do not speculate as to whether some cooperative arrangement was in place between state and federal authorities. The automobile was also seized at this time from an unknown party in San Jose, Santa Clara County.

On August 1, 1985, the United States filed a complaint in the district court for forfeiture of approximately $434,097.80 [1] and one 1985 Cadillac Seville automobile. On September 4, 1986, the government moved for summary judgment. Miroyan failed to respond to the motion in a timely fashion by stating specific facts, supported by affidavit or other evidence, showing that there was a genuine issue for trial. Fed.R.Civ.P. 56(e). Rather, he filed a memorandum of points and authorities, one footnote of which indicated his intention to contest the forfeiture on the grounds that the IRS lien took precedence. He sought a continuance until criminal proceedings in state court had concluded. Miroyan also filed a "motion for declaratory judgment" that the tax lien was superior to the DEA forfeiture claim. Miroyan replied to the government's summary judgment motion after a deadline set by the court. On April 22, 1987, the district court granted a government motion to strike Miroyan's reply, granted summary judgment of forfeiture, and denied Miroyan's motion for declaratory judgment.

Miroyan does not contend that any material fact is at issue. Rather, he appeals the order of summary judgment and the dismissal of his motion for declaratory judgment as a matter of law. We have jurisdiction over this timely appeal of a final judgment. 28 U.S.C. § 1291; Fed.R.App.P. 4(a)(1). We review a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

II

█ The threshold question is whether the district court properly exercised juris-

---

**1.** The difference of $97.80 between the amounts stated in the state and federal complaints is unexplained, but de minimus.

diction in rem over the $434,097 res. We may raise a jurisdictional question on our own motion. *Fiester v. Turner,* 783 F.2d 1474, 1475 (9th Cir.1986).

A federal forfeiture action under 21 U.S. C. § 881 is an in rem action. *United States v. $57,480.05 United States Currency and Other Coins,* 722 F.2d 1457, 1458 (9th Cir.1984). A California statutory forfeiture action against defendant property under the Health and Safety Code likewise is in rem. *People v. One 1941 Chevrolet Coupe,* 37 Cal.2d 283, 231 P.2d 832, 834 (1951) (per curiam).[2] The California proceeding commenced before the federal one. The last recorded order of the state court we have seen requires the money to be held by state authorities pending disposition. We know of no disposition.

A common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court. *Penn Gen. Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935); *United States v. $79,123.49 in United States Cash and Currency,* 830 F.2d 94, 95 (7th Cir.1987); *Knaefler v. Mack,* 680 F.2d 671, 675 (9th Cir.1982) (dictum); *Butler v. Judge of United States Dist. Ct.,* 116 F.2d 1013, 1015 (9th Cir.1941); *cf., United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 450 n. 5 (9th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). The purpose of the rule is the maintenance of comity between courts; such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the res upon which jurisdiction of each depends. *See Penn General,* 294 U.S. at 195, 55 S.Ct. at 389.

■ The rule against concurrent in rem proceedings is not a constitutional limitation upon the jurisdiction of the federal courts. Rather, it is a prudential limitation applied by the Supreme Court in the interest of judicial harmony. This does not mean, however, that the matter is within the discretion of the district court. The language of *Penn General* indicates that a federal court *must* yield to a prior state proceeding. *Penn General,* 294 U.S. at 195, 55 S.Ct. at 389 (" [T]he jurisdiction of one court must of necessity yield to the other.").

The Seventh Circuit recently applied the rule against concurrent in rem jurisdiction to facts similar to ours. *$79,123.49,* 830 F.2d at 94. The court required a federal forfeiture proceeding under 21 U.S.C. § 881 to be dismissed because the district court had assumed jurisdiction over a res already the subject of a Wisconsin forfeiture case. *Id.* at 99. We find the Seventh Circuit's application of the rule to be persuasive.

We decline to distinguish *$79,123.49* on the grounds suggested by the government: that while Wisconsin sought return of the res, and the federal order of summary judgment conflicted with the state disposition, here the state case is apparently inactive, and California does not seek the res. *See id.* at 95–96. Admittedly, if there is no conflict between judicial systems, the evils the rule is designed to avoid do not arise, and we have less reason to apply it. We have no facts before us to indicate that the state court relinquished jurisdiction, however.

■ Whether California executive authorities approved the DEA seizure is irrelevant. The rule is intended to promote comity between *courts,* not executives. *See Penn General,* 294 U.S. at 195, 55 S.Ct. at 389. We have found no authority indicating that a failure on the part of the state court to protest the federal proceeding, or by the state to prosecute, allows the district court to assume jurisdiction. Rather, some affirmative act of abandonment is required. *See One 1977 Mercedes,* 708 F.2d at 450 n. 5; C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3631 (1985). In cases in which there is in fact no dispute between

---

2. Most California forfeiture proceedings are now in personam adjuncts to a criminal case. *See* Cal.Health and Safety Code Ann. §§ 11470,

11488.4 (West Supp.1988). The state proceeding at issue here, however, was a civil case in rem. *Id.* at § 11488.4(i)(4).

state and federal courts, such affirmative proof should not be hard to obtain.

 In addition we reject, as did the Seventh Circuit, the argument that the fact of federal possession of the res takes jurisdiction from the state court and bestows it upon the district court. *See $79,123.49,* 830 F.2d at 98. Although we are familiar with the maxim, "possession is nine-tenths of the law," we prefer to apply the remaining one-tenth and decline to "substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine." *Id.* The district court must decline federal jurisdiction over money taken from the state court's jurisdiction in such a manner.

We thus reverse the order of summary judgment forfeiting $434,097. We remand for further factual determination by the district court as to whether an affirmative disposition by the state court may have allowed the district court to assume in rem jurisdiction.

### III

 The 1985 Cadillac Seville automobile was the subject of neither the state forfeiture complaint nor of any state court order. The district court had proper jurisdiction over it,[3] and we may proceed to the merits of the appeal. Miroyan does not contest the validity of the seizure of his cash and automobile by state authorities on March 8, 1985. He argues, however, that the DEA's warrantless seizure of his property from the state violated 21 U.S.C. § 881(b) and the Constitution. The federal forfeiture statute requires process to issue before a seizure unless, *inter alia,* the government has probable cause to believe the property has been used in violation of drug laws. 21 U.S.C. § 881(b)(4).

We need not reach the question whether the DEA needed, or had, independent probable cause prior to its seizure of the vehicle. The district court determined that the government met its initial burden of demonstrating probable cause for the sei-

zure, and that Miroyan failed to meet his burden of refuting the government's showing. *See United States v. One 56–Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983). The court based its finding on the discovery of a large sum of money, the transport of drugs in the vehicle, Miroyan's prior record, the purchase of the automobile with cash, and the lack of an adequate explanation for these facts other than Miroyan's involvement with narcotics trafficking.

We review the district court's finding of probable cause de novo, as a question of law. *United States v. $93,685.61 in United States Currency,* 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). The district court's finding of probable cause for forfeiture clearly must be upheld on these facts; the government met the standard of "less than prima facie proof but more than mere suspicion." *United States v. United States Currency, $83,-310.78,* 851 F.2d 1231, 1235 (9th Cir.1988) (quoting *Tahuna,* 702 F.2d at 1282). "Probable cause for forfeiture of a vehicle exists if there is evidence sufficient to warrant a reasonable belief that the vehicle has been used to transport contraband." *One 1977 Mercedes Benz,* 708 F.2d at 447.

The district court's order did not identify whether the government had probable cause prior to the seizure, or if it later came into possession of the relevant facts. The government must have had probable cause at the time of seizure. *See* 21 U.S.C. § 881(b)(4); *United States v. Dickerson,* 849 F.2d 443, 445–46 (9th Cir.1988). The court's failure to specify is not determinative, however, because even if the vehicle was seized illegally, it still is subject to forfeiture if probable cause is demonstrated by untainted evidence. *One 1977 Mercedes Benz,* 708 F.2d at 450. The only possibly tainted evidence is that relating to the DEA seizure itself. The district court clearly relied on evidence from a variety of

---

**3.** Regardless of what has happened to the automobile following the judgment of forfeiture, the district court's stay of judgment and waiver of supersedeas bond preserved our appellate in rem jurisdiction. *See $57,480.05,* 722 F.2d at 1458–59.

untainted sources, and the validity of that evidence has not been questioned.

 For the same reason, any constitutional claim relating to the warrantless seizure likewise fails. In addition, Miroyan lacked a legitimate interest in privacy in his automobile, after state officers lawfully had seized it, sufficient to assert successfully a fourth amendment objection to the federal seizure. *See Rakas v. Illinois*, 439 U.S. 128, 134, 143, 99 S.Ct. 421, 425, 430 (1983); *One 1977 Mercedes Benz*, 708 F.2d at 448–50. Nor is there any requirement of preseizure notice and hearing in a forfeiture case. *One 1977 Mercedes Benz*, 708 F.2d at 450 n. 5.

 Miroyan alleges that the delay of approximately four and one-half months between the seizure of the res on March 19, 1985, and the filing of the federal forfeiture complaint on August 1, 1985, violated 21 U.S.C. § 881(b) and the Constitution. The statute requires that when a seizure is made without process and by reason of probable cause, "proceedings ... shall be instituted promptly." 21 U.S.C. § 881(b). The statutory language adds no new element to the general due process requirement of timeliness in instituting forfeiture proceedings. *See United States v. Oil Screw Gulf Princess II*, 543 F.Supp. 1037 (D.S.C.1982) (equating various statutory promptness requirements with due process inquiry).

Due process concerns set no specific time limit; rather, proceedings must merely be commenced without unreasonable delay. *United States v. One 1971 BMW 4–Door Sedan*, 652 F.2d 817, 821 (9th Cir.1981). We apply the Supreme Court's four-factor standard of timeliness: The length of the delay, the government's reason for the delay, the claimant's assertion of any rights to a hearing during the delay period, and whether the delay prejudiced the claimant's interests. *See United States v. $8,850*, 461 U.S. 555, 566–69, 103 S.Ct. 2005, 2013–15, 76 L.Ed.2d 143 (1983). None of these factors is dispositive alone; they serve together as general guides for the analysis. *Id.* at 565, 103 S.Ct. at 2012.

Here, the length of the delay was not per se unreasonable. *See United States v. $47,980 in Canadian Currency*, 804 F.2d 1085, 1088–89 (9th Cir.1986), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 878 (1987) (14–month delay acceptable). Miroyan did not seek return of the seized property prior to the filing of the forfeiture complaint. As the property was already subject to IRS lien, Miroyan suffered minimal prejudice by the delay. The second *$8,850* factor is not met; the government does not give any reason for the delay. We find, however, that the remaining three factors substantially outweigh this deficiency.

Miroyan suggests that a legal forfeiture must be supported by an explicit finding of the district court that 21 U.S.C. § 881 was complied with in all respects. Miroyan cites no authority for this assertion and we have found none. We may affirm the district court on any ground supported by the record. *United States v. County of Humboldt, Cal.*, 628 F.2d 549, 551 (9th Cir. 1980). In any case, the district court specifically stated that "[t]he record demonstrates no impropriety or untimeliness on the part of the government with respect to the forfeiture proceeding." *United States v. One 1985 Cadillac Seville and Approximately $434,097.00 in United States Currency*, No. C–85–20481 WAI (N.D.Cal. Apr. 22, 1987) (order granting summary judgment at 6).

### IV

 Having disposed of Miroyan's other challenges to the forfeiture, we are left only with his claim that the IRS lien was a prior claim on the property that defeats the later forfeiture. We consider this issue as a challenge to summary judgment without reaching Miroyan's declaratory judgment motion.

The IRS lien applied to all of Miroyan's real and personal property, thus including the Cadillac. 26 U.S.C. § 6321. As a claimant to the res, Miroyan clearly has standing generally to contest the forfeiture. But once he has exhausted his substantive challenges to the judgment of for-

feiture, we find that he lacks continued standing to assert the alleged predominance of the tax lien.

In his desire to have his former property applied to his tax obligations rather than forfeited pursuant to 21 U.S.C. § 881, Miroyan is in the novel position of asserting vigorously the IRS' prior right to his property, while the IRS is not a party to these proceedings and has no apparent interest in enforcing its lien against this res. There is no evidence in the record before us of any proceeding to enforce the lien pursuant to 26 U.S.C.A. § 7403 (West Supp.1988). By attempting to assert the IRS' alleged superior possessory claim to the res, Miroyan constructively abandons *his* possessory claim. Rather, he is asserting another interest, an interest in having his tax obligations reduced. The two interests are not the same.

We require proper standing to contest a forfeiture both as a statutory matter and as an Article III and prudential requirement. *See* 21 U.S.C. § 881(d) (general provisions of Customs laws govern drug forfeitures); 19 U.S.C. § 1608 (person claiming res may file claim); *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1543–47 (11th Cir.1987) (discussing distinction between statutory and Article III standing). Although Miroyan meets the initial test of standing as a claimant, we deny him Article III standing to assert his tax-based claim.

A standing inquiry questions whether a plaintiff "has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction...." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed. 2d 343 (1975) (emphasis in original) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). If this minimum Article III test is met, the Court requires as a prudential matter that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; *accord Singleton v. Wulff*, 428 U.S. 106, 112–16, 96

S.Ct. 2868, 2873–75, 49 L.Ed.2d 826 (1976) (plurality).

Under Article III, the injury protested must be of the kind "likely to be redressed by a favorable decision." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). The relief Miroyan seeks is a reversal of summary judgment and a declaration that the IRS' rights have priority. But Miroyan asserts no facts meriting reversal of summary judgment, and as a matter of law the purported claim of the IRS is not relevant.

This in rem proceeding decides property rights in the res among claimants. *See $38,000*, 816 F.2d at 1545 (Supplemental Rules for Certain Admiralty and Maritime Claims applicable, for standing purposes, to 21 U.S.C. § 881 forfeitures); Supplemental Rules A, C, F. Since the IRS is not a claimant, a declaration of any equitable interest it theoretically might have would not affect the legal claim of the United States in this forfeiture proceeding. Miroyan fails to show how such a declaration would benefit him. *See Monroe v. California Yearly Meeting of Friends Church*, 564 F.2d 304, 305 n. 1 (9th Cir.1977). Miroyan lacks the required personal stake in the outcome. *Warth*, 422 U.S. at 498–99, 95 S.Ct. at 2204–05.

Since we hold that a declaration of the IRS' interest would not benefit Miroyan, and thus that he lacks Article III standing to assert this claim, we do not reach the question whether Miroyan's interest in reducing his tax liability rises to the possessory interest in a res that we require to grant standing. *See United States v. $5,644,540 in United States Currency*, 799 F.2d 1357, 1365 (9th Cir.1986). Specifically, we do not express an opinion whether Miroyan may assert the interests of the IRS as a matter of prudential standing. *See Singleton*, 428 U.S. at 114–16, 96 S.Ct. at 2874–75.

V

On the present record we are unable to determine whether the district court had proper in rem jurisdiction over the $434,097 res, in light of prior state proceedings in rem. The district court's order of summary judgment forfeiting $435,090.80 [4] is reversed. Miroyan's challenges to the forfeiture of the Cadillac automobile lack merit, and he lacks standing to assert his claim based on the IRS' lien. The order of summary judgment forfeiting the 1985 Cadillac automobile is affirmed. The district court's denial of Miroyan's motion for declaratory judgment is affirmed. The case is remanded to the district court to make factual findings as to whether the California court affirmatively disposed of the state case involving the cash.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

**4.** The $993.80 difference presumably was accumulated interest.