**UNITED STATES of America,
Plaintiff,**

v.

**$ 57,790.00 IN UNITED STATES
CURRENCY, Defendant.**

**No. 01 CV 0414 R (JAH).**

United States District Court,
S.D. California.

May 20, 2003.

Faith A. Devine, United States Attorneys Office, San Diego, CA, for the United States.

Richard Barnett, San Diego, CA, for Claimants Enedina Peraza–Soto and Ricardo Perez–Lopez.

ORDER IN SUPPORT OF DENIAL OF CLAIMANTS' MOTION FOR RECONSIDERATION OF COURT'S RULING REGARDING STANDING

RHOADES, District Judge.

## I. Introduction

This is a forfeiture action in which the standing of claimants Enedina Peraza–Soto and Ricardo Perez–Lopez has been hotly contested. The court previously ruled that claimants must establish standing by a preponderance of the evidence. Claimants have sought reconsideration of the court's ruling. The motion for reconsideration is denied for the reasons set forth below.

## II. Background

This civil forfeiture action is brought pursuant to the Civil Asset Forfeiture Reform Act of 2000. The United States seeks to forfeit $57,790 in cash ("the subject currency") which, it is undisputed, was seized by U.S. Customs Service and U.S. Drug Enforcement Administration agents on July 27, 2000 from a vehicle driven by Mr. Perez–Lopez. *See* July 30, 2003 Pretrial Order. Mr. Perez–Lopez was stopped after driving away from 692 Arga Place, Chula Vista, California. The subject currency was found in the console of the vehicle and behind the driver's seat.

For purposes of providing context to the issue presented, the court notes that it is the government's contention that in February 2000, U.S. Customs Service agents were conducting a criminal investigation relating to suspected marijuana smuggling and distribution activities of Mr. Perez–Lopez. The investigation included surveillance and drive-bys of Mr. Perez–Lopez's residence located at 692 Arga Place. On several occasions, the agents examined bags of garbage collected from the front of the residence as well as bags that were collected from the landfill after being transported from the residence to the landfill. Inside the bags was cellophane and packing tape with marijuana debris. When defendant was stopped in July of 2000, Mr. Perez–Lopez consented to a search of 692 Arga Place. A canine narcotic detector alerted to the possible presence of narcotics in several areas of the house.

Ms. Peraza–Soto filed a claim pursuant to Rule C(6) of the Supplemental Rules, Federal Rules of Civil Procedure, claiming to be the owner of the currency. Mr. Perez–Lopez also filed a claim pursuant to Rule C(6) "as an owner of said currency, and/or as bailor/bailee of Enedina Perez–Soto . . . ." Neither claimant explained in their claim the basis for their claim of ownership.

Neither claimant appeared at the Early Neutral Evaluation Conference despite local rules and a court order that required their appearance. Moreover, Mr. Perez–Lopez did not appear at the Case Management Conference and Settlement Conference, nor did he appear for his deposition.

This case was set for trial on November 19, 2002. Prior to that date, the court ruled that at trial claimants must, as a threshold issue, establish their standing by a preponderance of the evidence. On the first day of trial, the government appeared, ready to proceed. Ms. Peraza–Soto appeared along with claimants' counsel. Mr. Perez–Lopez did not appear. At that time, claimants' counsel orally moved the court to reconsider its previous ruling on the issue of standing. Counsel contended that his clients had already sufficiently demonstrated their standing by filing a notice of claim in accordance with Rule C(6).

The court continued the trial and permitted the parties to file supplemental briefs on the standing issue. As set forth in more detail below, the court adheres to its previous ruling.

## III. Analysis

 The Ninth Circuit "require[s] proper standing to contest a forfeiture both as a statutory matter and as an Article III and prudential requirement." *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1148 (9th Cir.1989). Standing is a question of law for the court. *San Diego County Gun Rights v. Reno,* 98 F.3d 1121, 1124 (9th Cir.1996).

 It is clear that in the Ninth Circuit an individual with an ownership interest in property has standing to challenge a forfeiture. *See United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1058 (9th Cir.1994), *superseded by statute on other grounds.* Moreover, an individual with a possessory interest in the property will have standing if that interest is explained. *See Id.* ("[W]here a claimant asserts a possessory interest and provides some explanation of it (*e.g.,* that he is holding the item for a friend), he will have standing."). What is not necessarily clear at first glance is whether a simple allegation of the requisite interest will suffice to establish Article III standing at all stages of a forfeiture proceeding or whether a claimant must at trial prove the interest by a preponderance of the evidence. The Ninth Circuit has not squarely addressed this issue.

The Ninth Circuit has, without explanation, announced what appears at first glance to be different tests for determining the requisite amount of evidence a claimant must tender to support standing in a forfeiture action. For example, a cursory reading of *$191,910.00 in U.S. Currency* might suggest that a bare allegation of the requisite interest is enough for standing at all stages of the forfeiture proceeding. *See United States v. $191,910.00 in U.S. Currency,* 16 F.3d at 1057 ("To have standing to challenge a forfeiture, a claimant must allege that he has an ownership or other interest in the forfeited property."). In contrast, in *United States v. Real Property Located at Section 18, Tp. 23, Range 9, Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake, Olympic Nat. Park, Grays Harbor County, WA.,* 976 F.2d 515, 520 (9th Cir.1992), the Ninth Circuit explained that to establish standing "[t]he claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property."

The apparent conflict between these two cases evaporates, however, when these cases are considered in light of the United States Supreme Court case of *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992),

which was followed by the Ninth Circuit in *Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir.2002). As the Supreme Court explained in *Lujan*, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" and, accordingly, the elements of standing "must be supported at each stage of litigation in the same manner as any other essential element of the case." *Lujan*, 504 U.S. at 560, 561, 112 S.Ct. 2130. Thus, for example, although at the motion to dismiss stage it is enough to allege the elements of standing, at the summary judgment stage the party with the burden of demonstrating standing must demonstrate that there is a genuine issue of material fact as to the standing elements, and at trial standing must be proved by a preponderance of the evidence. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130; *Central Delta Water Agency*, 306 F.3d at 947.

Granted, the Ninth Circuit has never considered whether *Lujan* applies in the context of a forfeiture action, and forfeiture actions differ from typical actions brought in federal court because standing is not a part of the plaintiff's case given that the government, not the claimant, is the plaintiff. However, regardless of the position of the claimant *vis-a-vis* the government in a forfeiture action, *a claimant must establish Article III standing. See One 1985 Cadillac Seville*, 866 F.2d at 1148. The court can find no principled basis for concluding that the rationale and holding of *Lujan* regarding the requirements for the establishment of standing should not apply in a forfeiture action. Moreover, as explained below, application of *Lujan* in the forfeiture context works to harmonize Ninth Circuit case law. Final-

ly, application of *Lujan* to forfeiture cases makes practical sense.

As noted, in *$191,910.00 in U.S. Currency* the Ninth Circuit stated that a mere allegation of ownership is sufficient for standing in a forfeiture action. However, in *$191,910.00 in U.S. Currency*, the issue of standing was raised in an appeal of the district court's order denying the government's motion to dismiss for lack of standing.[1] Therefore, the court's focus was properly on the allegations of the claimant's claim. In contrast, in *Real Property Located at Section 18*, the Ninth Circuit was reviewing a standing decision made after a bench trial. Thus, under *Lujan*, it was appropriate for the Ninth Circuit to examine the claimant's claim of ownership under a preponderance of the evidence standard.

Claimants contend that the holding of *Real Property Located at Section 18* "that the claimant had the burden of establishing by a preponderance of the evidence that he had an interest in the property was simply one element of the innocent owner defense he proffered." Claimants' Supplemental Standing Argument p. 4, lines 16–18. Claimants misread this case. In *Real Property Located at Section 18*, the claimant made two arguments on appeal:

> First, he assert[ed] that the district court erred in finding that he did not have an interest in the land, thus denying his standing to contest its forfeiture. Second, he argue[d] that the district court's finding that he had knowledge of the marijuana growing operation was clearly erroneous.

976 F.2d at 520. The Ninth Circuit addressed the standing issue first, explaining that "[t]o contest a forfeiture, a claimant must have an interest in the defendant

---

1. Although a summary judgment motion was also filed in that case and although the court's ruling on that motion was also appealed, the standing issue was raised in the motion to dismiss, not the motion for summary judgment.

property." *Id.* In the next sentence the court explained that "[t]he claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property." Thus, *Real Property Located at Section 18* teaches that to contest a forfeiture at trial, the claimant must prove standing by a preponderance of the evidence. Given the stage of the present proceedings, *Real Property Located at Section 18* is controlling authority here.

The court is not unmindful of the case of *United States v. Real Property Known As 22249 Dolorosa Street, Woodland Hills, Cal.,* 167 F.3d 509 (9th Cir.1999). However, that case is not controlling here. In that case, one of the claimants "orally withdrew his claim to the defendant real property" after the district court's pretrial ruling that there was probable cause to forfeit the property. *Id.* at 511. The other claimants went to trial, and the jury returned a verdict forfeiting the property.

On appeal, the government contended that the claimant "relinquished his standing to appeal when he withdrew his claim...." *Id.* at 512. The Ninth Circuit concluded that by withdrawing his claim following the probable cause determination, the claimant was simply electing "to defend by refuting the government's showing of probable cause, rather than proceeding to trial on the issue of the source of funds." *Id.* The court concluded that the claimant "was entitled to make that choice without loss of his standing." *Id.*

Although earlier in the opinion the court cited *$191,910.00 in U.S. Currency* for the proposition that "[t]o have standing to challenge a forfeiture, a claimant must allege that he has an ownership or other interest in the property," the issue before the court was whether the claimant had standing to appeal or whether he had relinquished his standing by his withdrawal of his claim to the property. Nothing in the opinion suggests that the district court ever considered the issue of the claimant's standing, and the Ninth Circuit's decision clearly did not hinge on whether the claimant's allegations of ownership were sufficient to establish Article III standing before the trial court or whether the claimant had to present evidence in support of his claim to ownership. Thus, the Ninth Circuit's citation to *$191,910.00 in U.S. Currency* in *Real Property Known As 22249 Dolorosa Street* amounts to nothing more than *dicta.*

Moreover, other Ninth Circuit cases support the conclusion that it is appropriate to require a claimant to provide evidence in support of a challenged claim of ownership. For example, in *United States v. One Parcel of Land,* 902 F.2d 1443, 1445 (9th Cir.1990), the Ninth Circuit affirmed the district court's finding that the claimant did not have standing, noting that although the claimant was listed as the title owner of an interest in the property, the claimant "presented no documentary evidence regarding his finances or payments with respect to the purchase of the property." *Id.* at 1445. Furthermore, he "could not remember how much he had contributed, or the amounts that others had loaned to him." *Id.* He claimed that he had paid property taxes on the property but had "no record or writing to support this claim." *Id.* The Ninth Circuit concluded that the district court did not err in concluding that the claimant "had failed to meet his burden of proving more than nominal ownership" and therefore lacked standing to challenge the forfeiture. *Id.*

Of course, in some cases, there may be no dispute that the claimant is the owner of the property, in which case there may not be a need for the claimant to present evidence on this issue. For example, where the defendant currency is seized from the claimant's house and is believed

to be the proceeds of drug deals conducted from the claimant's house, the government may very well not contest the claimant's claim of ownership of the currency. Here, however, the government does challenge Mr. Perez–Lopez's claim, and with good reason.

Mr. Perez–Lopez takes the position that he is the owner "and/or [the] bailor/bailee of" the owner of the subject currency, which was seized from a vehicle he was driving. Yet, Mr. Perez–Lopez has never, in the context of this action, explained the basis for his claim of ownership or the basis of his alternative claim that he was a bailor/bailee of the owner, nor has he allowed himself to be cross-examined on this issue. Mr. Perez–Lopez did not appear at the Early Neutral Evaluation Conference, nor did he appear at the Case Management Conference and Settlement Conference. He also failed to appear for his deposition. Furthermore, his counsel has represented that Mr. Perez–Lopez does not intend to appear for trial, and he in fact was not present on November 19, 2002. It defies common sense for the court to hold that a simple, unexplained allegation of ownership "and/or" possession as a bailee is sufficient to establish Mr. Perez–Lopez's standing at this stage of the proceeding. Moreover, it shows incredible chutzpah on Mr. Perez–Lopez's part to argue otherwise.[2]

Although Mr. Perez–Lopez now proffers his statements to the agents at the time of the arrest regarding the subject currency, such a tack is unavailing. Besides the fact that such statements are hearsay, the time for filing a motion for summary judgment has long since past. Because Mr. Perez–Lopez chose not to file a motion for summary judgment on the issue of standing, the standing issue must be resolved at trial.

In addition, given that the subject currency was found in a vehicle driven by Mr. Perez–Lopez and given that drug packaging and marijuana debris was found in trash bags from 692 Arga Place on several occasions, it is entirely appropriate to require Ms. Pereza–Soto to present evidence other than her Rule C(6) claim in support of her conclusory allegation that she is the owner of the property. Although Ms. Peraza–Soto contends that she stated in responses to interrogatories and in her deposition that she is the owner of the subject currency because it represents the proceeds from the sale of her house, again, the time for filing a motion for summary judgment has passed. Thus, this issue is one for trial.

It should also be noted that the government strongly disputes that the subject currency could be the proceeds from the sale of Ms. Peraza–Soto's house, as the currency was seized 18 days prior to the signing of the grant deed. *See* Exhibit 11 attached to Plaintiff's Response to Claimants' Supplemental Brief on Standing. The court notes this fact to illustrate the fatal flaw in claimant's position. Claimants in essence argue that the court must in all instances accept a claimant's representation regarding ownership, no matter how dubious. Claimants' position, if accepted, would as a practical matter make it impossible for the government to challenge an illegitimate claim to ownership, whether at the summary judgment stage or at trial, and would require the court to make its Article III standing determination without full development of the record. It would also have the effect of encouraging unscrupulous individuals who do not truly have

---

**2.** In that sense, this case has a familiar ring. *See United States v. Currency, U.S. $42,500.00,*

283 F.3d 977 (9th Cir.2002).

an interest in the·property to file a claim, perhaps at the encouragement of the true owner who does not. wish to reveal the owner's identity for fear of prosecution. Not only is such a result unwise, but it is unsupported by the case law.

## IV. Conclusion

For the reasons set forth above, the court reaffirms its previous order that Ms. Pereza–Soto and Mr. Perez–Lopez must prove their standing to contest the forfeiture at trial by a preponderance of the evidence. **The trial on the issue of standing is hereby continued from Tuesday, August 12, 2003 at 9:00 a.m. to Tuesday August 26, 2003 at 9:00 a.m.**

**IT IS SO ORDERED.** .